Gibson, J.
 

 Petitioner, an applicant for housing in respondent Authority’s apartments, challenges the determination which rejected his application without specification of any ground other than that he had been found “not eligible for admission as a tenant ’ ’. The statute, however, provides that in such case the Authority shall file in its office a written record stating the reasons for ineligibility and shall advise the applicant that he may be apprised of the reasons at a personal interview at the office of the Authority (Public Housing Law, § 156-a, as added by L. 1968, ch. 224, eff. July 1, 1968).
 

 The letter-determination being deficient in failing to state, as required by section 156-a, that the applicant might be ‘ ‘ apprised of the reason or reasons for such ineligibility at a personal interview ”, Special Term correctly annulled; and its remand to the Authority was for the purpose of “ a full evidentiary hearing”. The Appellate Division reversed, on the law, and
 
 *424
 
 granted the petition “ only to the extent that the matter is remitted to [the Authority] for action consistent with section 156-a of the Public Housing Law ” (36 A D 2d 728).
 

 Thus, the issue on this appeal, taken by our leave, is whether the Appellate Division was correct in rejecting Special Term’s holding that petitioner was entitled to “ a full evidentiary hearing ”, the Special Term’s conclusion in this respect being that
 
 ‘ ‘
 
 the due process standards enunciated in
 
 Matter of Williams v. White Plains Housing Auth.
 
 (62 Misc 2d 613 [affd. 35 A D 2d 965]) clearly were not met in this case”. (63 Misc 2d 655.) The Appellate Division, in reversing, summarily disposed of Special Term’s conclusion, stating: “Nothing contained in * * *
 
 Williams *
 
 * * requires a contrary holding, since that case involved the eviction of a tenant already in public housing” (36 A D 2d 728, 729). The distinction is critical, as the Appellate Division held. Similarly to be distinguished, as dealing with an attempted eviction, is
 
 Matter of Vinson
 
 v.
 
 Greenburgh Housing Auth.
 
 (29 A D 2d 338, affd. 27 N Y 2d 675).
 

 A somewhat different situation was presented in
 
 Matter of Fuller
 
 v.
 
 Urstadt
 
 (28 N Y 2d 315), involving a tenant’s asserted right of renewal of his lease in a Mitchell-Lama project; and Judge Beeitel, writing for the court (p. 318), said: “ Petitioners are entitled to the same treatment as other individuals who are the direct subjects of State action, namely, the assurance, implemented by the right to a hearing which need consist of no more than an opportunity to deny or explain, that the State has not acted arbitrarily or capriciously. The test is the limited one of arbitrariness and does not involve a full evidentiary hearing or the full scope review of administrative quasi-judicial action which must be supported by substantial evidence [citation].” Accordingly, we remanded “ to give the petitioners a limited hearing after advising them of the reasons for refusing to give them a renewal lease ” (p. 319). In the case at bar, the Appellate Division considered that “ the administrative complications and burdens attendant upon the various housing authorities in the State preclude the rigid requirement ordered by Special Term for
 
 ‘
 
 a full evidentiary hearing ’ in each case of rejection. Upon the oral argument of this proceeding the attorney for the
 
 amicus curiae
 
 New York City Housing Authority [the operations of which will be directly affected by that ruling]
 
 *425
 
 pointed out that at least 9,411 applications for public housing in New York City were rejected during 1970. ”
 
 [1]
 
 (36 A D 2d 728, 729).
 

 The petitioner relies on
 
 Goldberg
 
 v.
 
 Kelly
 
 (397 U. S. 254) but nothing in that case suggests a result different from that at which the Appellate Division arrived in the case at bar.
 
 Goldberg
 
 held that due process required a full evidentiary hearing prior to the termination of welfare benefits being received. The court (p. 264) said: “ Thus the crucial factor in this context * * * is that termination of aid pending resolution of a controversy over eligibility may deprive an
 
 eligible
 
 recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.” (Emphasis as in original.)
 

 It has long been settled that a party aggrieved by loss of a pre-existing right or privilege may enjoy procedural rights not available to one denied the right or privilege in the first instance. To draw upon common examples, applicants for a motor vehicle license receive specific notice of their rejection (which is required as to housing applicants found ineligible pursuant to section 156-a of the Public Housing Law) but have no right to an administrative hearing on the issues (Vehicle and Traffic Law, § 501;
 
 Matter of Nelson
 
 v.
 
 Kelly,
 
 4 A D 2d 596), such as that accorded a driver who has had his license revoked or suspended (Vehicle and Traffic Law, § 510;
 
 Matter of English
 
 v.
 
 Tofany,
 
 32 A D 2d 878). Similarly, a liquor license cannot be canceled or revoked without a formal hearing; whereas a rejected applicant for such a license possesses no such right (9 NYCRR 52.13, 54.1
 
 et seq.).
 

 This distinction obtains even in the criminal law. Thus, we have recently held that once a prisoner has been granted parole, he has a right to counsel at any subsequent revocation hearing
 
 (People ex rel. Menechino
 
 v.
 
 Warden,
 
 27 N Y 2d 376, mot. for rearg. den. 28 N Y 2d 859); but one seeking parole in the first
 
 *426
 
 instance possesses no parallel right
 
 (Matter of Briguglio
 
 v.
 
 New York State Bd. of Parole,
 
 24 N Y 2d 21). In
 
 Menechino
 
 v.
 
 Oswald
 
 (430
 
 F.
 
 2d 403, 411), cited in
 
 People ex rel. Menechino
 
 v.
 
 Warden (27
 
 N Y 2d 376, 379-380, n. 4,
 
 supra),
 
 the Second Circuit explained this distinction by noting, as to parole release hearings,
 
 “
 
 [n]or is this a case where the state, in an adversary proceeding, is seeking to deprive a person of liberty, property or
 
 a status presently enjoyed
 
 [citations].” (Emphasis supplied.)
 
 [2]
 

 It follows that the limitations imposed by the Appellate Division upon the hearing to be had upon remand were proper.
 

 The order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
 

 Order affirmed.
 

 [1]
 

 . It is stated in the Attorney-General's brief: “ The New York City Housing Authority receives approximately 90,000 applications annually, has an average backlog of 135,000 applications, and is able to provide admission to about 10,000 applicants.”
 

 [2]
 

 . We find unpersuasive
 
 Davis
 
 v.
 
 Toledo Metropolitan Housing Auth.
 
 (311 F. Supp. 795, 797 [U. S. Dist. Ct., N. D. Ohio]), which seems to be the only case on point with that before us, and which held that applicants for public housing may not be declared ineligible without an opportunity for an evidentiary hearing, citing
 
 Goldberg
 
 as authority for that conclusion.